FOUNTAIN CITY SANITARY DISTRICT et al.

*v.*

THE KNOX COUNTY ELECTION COMMISSION et al.

(*Knoxville,* September Term, 1957.)

Opinion filed December 6, 1957.

EARL S. AILOR, Knoxville, for Knox County Election Commission.

PRIVETTE & MORTON, Knoxville, for certain individuals.

GEORGE F. McCANLESS, Attorney General, and ALLISON B. HUMPHREYS, Solicitor General, for appellants, Knox County, etc.

FOWLER, ROWNTREE & FOWLER, Knoxville, for appellees, Fountain City, etc.

Mr. Justice Tomlinson delivered the opinion of the Court.

The question presented here in a proper proceedings under the declaratory judgment statute is whether Chapter 320 of the Private Acts of 1957 is a constitutional enactment. It is in this Court on appeal from a decree of the Chancellor so adjudging.

Fountain City is a section of Knox County one and a half miles north of Knoxville. Within its boundaries there dwell some 35,000 people. Its soil does not satisfactorily absorb waste material. Its topography is such that this material is scattered over the surface of the soil and washed into parts of Knoxville, and tends to pollute some of its water supply. A serious sanitary health hazard thereby exists.

As a result of the physical situation described, the General Assembly enacted Chapter 176 of the Private Acts of 1945. It was amended by a Private Act of 1947 and 1949, Chapters 143 and 831, respectively. This Act, so amended, was adjudged constitutional in 1950 in the case of *Whedbee v. Godsey,* 190 Tenn. 140, 228 S.W.2d 91.

These statutes define the entity (Fountain City Sanitary District) thereby created a municipality or public corporation in perpetuity * * * but without any power to levy or collect taxes for services authorized by this Act.

Its authority is limited to maintenance of (1) a sewerage disposal system, (2) garbage collection and disposal, (3) as a necessary incident to the above services, a water system, and (4) fire protection. It may authorize within certain limitations revenue bonds for the acquiring, etc., of all such facilities, and has issued such bonds in excess of $1,000,000.

In order to solve the physical problem heretofore mentioned, it was deemed necessary that the district be authorized to embrace adjoining territories and extend these services therein with ability to collect the charges thereby required of those to whom the services are to be rendered. It was realized, too, that the extension of such services requires the issuance of additional revenue bonds.

As a solution of the aforementioned problems, there was enacted as an amendment to the foregoing acts the statute in question here, to-wit, Chapter 320 of the Private Acts of 1957.

The closing section of this 1957 statute is this:

"Section 8. Be it further enacted. That this Act shall become effective only upon approval thereof in an election by a majority of those voting in said election in the Fountain City Sanitary District."

The original act and the amendments of 1947 and 1949 did not contain the above quoted Section 8 appearing in the 1957 amendment; this, notwithstanding the fact that the powers conferred by the 1957 amendment are in quality the same, for the most part, as those contained in the original act and its previous amendments. Subsequent to the 1949 amendment, but prior to this 1957

amendment to the original act, our Constitution was amended in several respects, including one commonly known as the Home Rule Amendment now carried as Article 11, Section 9 of our Constitution. That Article 11, Section 9, in so far as material here, is as follows:

. "Sec. 9. Power over local affairs—Home rule for cities and counties—Consolidation of functions. * * * "* * * * and any act of the General Assembly private or local in form or effect applicable to a particular county or municipality either in its governmental or its proprietary capacity shall be void and of no effect unless the act by its terms * * * requires approval in an election by a majority of those voting in said election in the municipality or county affected."

The situation described with reference to this 1957 amendment, together with the chronology of legislative history surrounding the statute which it amends, seems to justify, in fact, requires the conclusion that the heretofore quoted Section 8 was inserted in the 1957 amendment, though left out of the original act and all previous amendments thereto, because of an apprehension that it might be judicially determined that the Fountain City Sanitary District is a municipality within the meaning of the Home Rule Amendment; hence, that the 1957 statute would be invalid without this Section 8 calling for its approval in an election before becoming effective.

But the majority of this Court, with Mr. Justice Prewitt disagreeing, is of the opinion that the Fountain City Sanitary District is not a municipality within the meaning of the Home Rule Amendment to our Constitution.

■ The limit of the authority of the Fountain City Sanitary District is to maintain within its borders sewerage and water services, garbage collection, and fire protection, with the power to annex adjoining territories into which these services may be extended, and to issue revenue bonds for the acquiring, etc. of proper facilities for rendering those services. It is, therefore, nothing more than a utility district, sometimes defined as a *quasi* public corporation. *First Suburban Water Utility District v. McCanless,* 177 Tenn. 128, 133-134, 146 S.W.2d 948.

The lead line of Section 9 of the Home Rule Amendment is "Home rule for cities and counties". That is, this lead line expressly designates the governmental entities for which it is intended this Section 9 to apply.

■ Through-out the body of this provision there is used the word "municipality". Unless there is to be ignored the word "cities" in the lead line—and the Court has no right to ignore it—the word "municipality" used continuously in the body of the Act must be construed as meaning a municipality within the general understanding of what is a "city". Now the general understanding of the word "city"; that is, its meaning for ordinary purposes is defined in the little New College Standard Dictionary published by Funk and Wagnalls and in every day use, as being "a municipality of the first class".

Keeping in mind the extent of the powers of this Fountain City Sanitary District, it is perhaps appropriate to quote under the word "City" in 7 Words and Phrases, page 296, et seq. the following:

"A school district cannot be classed as a 'city' within statute authorizing service of summons. *Gould v. Richmond School Dist.*, 136 P.2d 864, 867, 58 Cal.App. 2d 497.

"A 'city' or 'village' is a 'voluntary corporation' and not a *'quasi*-municipal corporation'. *Leviton v. Board of Education of City of Chicago*, 30 N.E.2d 497, 500, 374 Ill. 594."

" 'Cities,' 'towns,' and 'villages,' are true municipal corporations, and *in addition to exercise of functions of self-government,* transact matters of *quasi* private or public character. *Strickfaden v. Green Creek Highway Dist.*, 248 P. 456, 458, 42 Idaho, 738, 49 A.L.R., 1057." (Emphasis supplied.)

" 'Irrigation district" is not a 'county' or a 'city' within meaning of general election laws confining election contests to any election held therein so that losing candidate for office or director of an irrigation district was confined to remedy, of recount votes as provided in Water Code. *Hunt v. Superior Court in and for Stanislaus County*, 209 P.2d 411, 412, 93 Cal.App. 2d 504."

"Cheyenne soil erosion district was not a 'city', 'town' or 'municipality' within constitutional provision reserving referendum powers to legal voters of every city, town and municipality. *People ex rel. Cheyenne Soil Erosion Dist. v. Parker*, 192 P.2d 417, 420, 118 Colo. 13."

■ Since the Fountain City Sanitary District is not a municipality within the meaning of the Home Rule Amendment, it is further insisted that Section 8 of this

1957 amendatory statute renders that amendatory statute unconstitutional in that this section provides that the Act shall become effective only upon approval thereof in an election held for the purpose of procuring such approval. Unless this Section 8 can be elided this insistence is true, because if a proposed law is to become effective only upon the event of a favorable vote of the people to be governed by it, then it is a delegation of legislative power; thus, in violation of Article 2, Section 2 of the Tennessee Constitution. *Wright v. Cunningham,* 115 Tenn. 445, 468, 469, 91 S.W. 293.

This Court went over the rule of elision in some detail in *Davidson County v. Elrod,* 191 Tenn. 109, 232 S.W.2d 1. There (191 Tenn. 112, 232 S.W.2d 2) it is said:

"Perhaps the clearest statement of the rule is that if it is made to appear from the face of the statute that the Legislature would have enacted it with the objectionable features omitted, then those portions of the statute which are not objectionable will be held valid and enforceable, *State ex rel. Bond v. Taylor,* 119 Tenn., 229, 257, 104 S.W. 242, provided, of course, there is left enough of the Act for a complete law capable of enforcement and fairly answering the object of its passage. *Reelfoot Lake Levee District v. Dawson, supra* [97 Tenn. 151, 36 S.W. 1041, 34 L.R.A. 725]."

It is made clear from the chronological legislative history of this statute and its amendments that Section 8 of the 1957 amendment was only inserted because of an erroneous thought that it might come within the Home Rule Constitutional Amendment requiring an election.

Thus, for all practical purposes, it is made to appear from the face of the statute, including, of course, its amendments, that the Legislature would have enacted the 1957 amendment without the inclusion therein of Section 8 providing for this election had the Legislature felt assured that this sanitary district is not a municipality within the meaning of the Home Rule Amendment.

Moreover, it is expressly made to appear from the face of the 1957 amendment that the Legislature would have enacted the 1957 statute with Section 8 omitted. It is made expressly to so appear by Section 6 of the 1957 amendment providing this:

"Section 6. Be it further enacted, That if any one or more provisions of this Act or the application thereof to any person or circumstances shall ever be held by any court of competent jurisdiction to be invalid the remaining provisions hereof and the application thereof to persons or circumstances other than those to which it is held to be invalid shall not be affected thereby."

Too, when Section 8 is elided, there is left a "complete law capable of enforcement and fairly answering the object of its passage". In fact, every object of its passage is completely answered since Section 8 only provides, but illegally so, that it is to become effective only after an election approval.

■ The Court is, therefore, of the opinion, and so adjudges, that Section 8 should be elided from Chapter 320 of the Private Acts of 1957. It, therefore, results that Chapter 320 of the Private Acts of 1957, Section 8 having been elided, is a constitutional enactment.

The decree of the Chancellor will be modified as herein adjudged, and as so modified will be affirmed with the costs assessed against the original complainants.

SWEPSTON, Justice (concurring).

It is my view that the so-called Home Rule Amendment was never intended to apply to any type of governmental corporation other than the cities of the different classes. In addition to what is stated in the opinion prepared by Tomlinson, Justice, it will be revealing to examine the Journal of the Constitutional Convention Proceedings, beginning on page 1038 and running down through 1059. A perusal of these pages will disclose that the word "cities" and the word "counties" are used throughout the discussion and that the word "municipality" appears only two or three times. There is not the slightest indication that there was any thought in the minds of the different speakers of any type of municipality other than a "city" of one or the other class. See especially pages 1042, 1043, 1045, 1047, 1051, 1058 and 1059.

Therefore, it is plain why the caption to Section 9 reads as follows:

"Power over local affairs—Home rule for cities and counties—Consolidation of functions.—"

It, therefore, seems to me to be utterly nondeterminative that drainage districts, water districts, sanitary districts, school districts, etc., may properly be designated *quasi* municipal corporations or that many of them have a number of powers that are similar to or the same in substance as certain power possessed by cities. They are

simply not included within the intention of the framers of the Home Rule Amendment.

For this additional reason, I concur in the majority opinion.

PREWITT, Justice (concurring).

I concur in the above well reasoned opinion and feel that this majority opinion places the decision in the case on the proper ground, that is, by application of the rule of elision. I feel that the 1957 amendment would have been passed if the referendum features were not included and this would justify us in treating this provision as surplusage.

However, I do want to make it clear that in my opinion under the broad terms of Chapter 176 of the Private Acts 1945, this district should be treated as a municipal or *quasi* municipal corporation, for the purpose of Article 11, Section 9 of the Constitution.